**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **L.R.**

**No. 21-1027** (Gilmer County 21-JA-6)

**MEMORANDUM DECISION**

Petitioner Mother K.R., by counsel Andrew B. Chattin, appeals the Circuit Court of Gilmer County's November 23, 2021, order terminating her parental rights to L.R.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Katica Ribel, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Mary Elizabeth Snead, filed a response on the child's behalf in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights without first granting her motion for a post-adjudicatory improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In March of 2021, the DHHR filed a child abuse and neglect petition alleging that petitioner and the father failed to maintain a suitable home for the child. The DHHR alleged that the father was arrested for animal cruelty and when law enforcement entered the home at the time of the arrest, it was clear that then-two-year-old L.R. was in the home alone. DHHR workers responded to the home the following day and observed an overwhelming odor of "rotting trash [and] animal urine and feces." The living room, kitchen, and hallways contained piles of rotting trash with some refuse "spilling out of the trash bags," as well as dirty laundry.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

The DHHR alleged that when petitioner retrieved the child from the master bedroom, the child had a "large head injury" on his forehead. Upon seeing the child, DHHR workers indicated that he would be taken into emergency custody, and petitioner attempted to flee the home, only to be stopped by law enforcement outside of the home. The DHHR alleged that the child was "covered in spilt food and filth" that was "crusted on his coat." The child had also suffered several large bites from bed bugs, which petitioner admitted had been a problem in the home. Later, the circuit court ratified the emergency removal of the child and ordered petitioner to participate in random drug screening, a parental fitness evaluation, and biweekly visitation with the child.

Petitioner stipulated to the allegations contained in the petition in April of 2021. The circuit court adjudicated petitioner as an abusing parent and the child as a neglected child. Petitioner moved for a post-adjudicatory improvement period, and a hearing was scheduled for the motion.

On October 12, 2021, the circuit court held a final dispositional hearing. Petitioner did not appear, but counsel represented her. Petitioner's counsel moved to continue the hearing due to petitioner's absence, stating that petitioner was in New York and did not have transportation to appear for the hearing. The father objected, arguing petitioner had failed to visit with the child for several weeks and had not been participating in services. The circuit court denied petitioner's motion.

A DHHR worker testified that the DHHR was recommending petitioner be granted an improvement period but acknowledged that "it [was] unlikely . . . that she would participate in an improvement period." The worker further testified that petitioner had not visited the child since September 10, 2021, missing the next nine visitations that were scheduled before the dispositional hearing. The DHHR worker explained that petitioner informed her on September 14, 2021, that she was in New York with her family and her "new fiancé" and "she has not returned since then." According to the DHHR worker, she investigated the home where the child was removed, and the conditions at the time of removal had been remedied. The DHHR worker clarified, however, that petitioner was divorcing the father and would not be living in that home. The DHHR worker testified that she received no information regarding the suitability of petitioner's current living quarters in New York and that petitioner had not identified any housing in West Virginia where she was residing. Further, petitioner had not participated in parenting and adult life skills classes since August 29, 2021. The court also heard evidence that petitioner's parental fitness evaluation included an "extremely poor" prognosis that she could maintain minimally adequate parenting due to petitioner's denial that L.R. was neglected, her significant cognitive deficit, her "historical poor judgment," and her lack of insight in the abuse and neglect. Finally, the worker admitted that she did not know the date that petitioner last participated in a random drug screening, but that petitioner was permitted to visit the child without drug screening, in violation of the circuit court's orders.

Ultimately, the circuit court found petitioner had been "non-compliant and ha[d] flagrantly violated the court's orders" and that the DHHR knew that petitioner had not "participated [in services] and that her psychological parenting prognosis [was] 'extremely poor.'" The court concluded there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that termination of petitioner's

parental rights was necessary for the welfare of the child. Accordingly, the circuit court terminated petitioner's parental rights by its November 23, 2021, order. Petitioner now appeals that order.[2]

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights without first granting her motion for a post-adjudicatory improvement period. She argues that it was reasonable for her to move out of state after she ended her relationship with the father. Petitioner asserts that she did not have the resources to obtain suitable housing in West Virginia and, therefore, needed to move in with relatives in New York. Further, petitioner emphasizes that the testifying DHHR worker investigated the family home and found that the unsuitable conditions had been remedied. Thus, according to petitioner, there was a reasonable likelihood that she could correct the conditions of abuse and neglect in the near future, as those conditions had been substantially corrected prior to the dispositional hearing. Finally, petitioner asserts that she was compliant with services while she resided in West Virginia, which supports a finding that she was likely to participate in an improvement period. Upon our review, we find petitioner is entitled to no relief.

In order to be granted a post-adjudicatory improvement period under West Virginia Code § 49-4-610(2)(B), the parent must first "demonstrate[], by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period and the court further makes a finding, on the record, of the terms of the improvement period." "West Virginia law allows the

---

[2]According to the parties, the father retains his parental rights and is participating in an improvement period. The permanency plan for L.R. is reunification with his father with a concurrent plan of adoption by a relative where he is currently placed.

3

circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015); *see also In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002) (holding that a circuit court has the discretion to deny a motion for an improvement period when no improvement is likely).

Here, the circuit court did not err in denying petitioner's motion for a post-adjudicatory improvement period because petitioner did not meet her burden of demonstrating that she was likely to fully participate in an improvement period. The evidence presented showed that while petitioner was compliant with services earlier in the proceedings, she failed to comply with services in August and September of 2021. Petitioner ceased attending parenting and adult life skill classes, random drug screening appointments, and supervised visitations with the child. Indeed, even the testifying DHHR worker, whose testimony is critical to petitioner's argument, acknowledged that "it [was] unlikely . . . that [petitioner] would participate in an improvement period." Likewise, petitioner presented no evidence that she had obtained suitable housing for the child, which would have been a critical term of her improvement period based upon the allegations in the petition. Although the DHHR worker testified that the family home from which the child was removed no longer had safety issues, it was clear from the evidence that petitioner would not be living in that home with the father, and she did not present any other evidence that she was maintaining suitable housing for the child. Accordingly, we agree with the circuit court that petitioner failed to present clear and convincing evidence that she was likely to participate in an improvement period and find no abuse of discretion in the circuit court's denial of her motion.

Further, we find no error in the circuit court's termination of petitioner's parental rights to the child. Pursuant to West Virginia Code § 49-4-604(c)(6), a circuit court may terminate a parent's parental rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the child. West Virginia Code § 49-4-604(d) provides that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected when the "abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help."

As discussed above, the evidence showed that petitioner was not likely to participate in an improvement period or cooperate with the services offered by the DHHR. Furthermore, it was clear from the evidence that petitioner had not obtained a suitable home for the child on her own. Petitioner's failure to remedy the conditions of abuse and neglect is compounded by her parental fitness evaluation, which provided an "extremely poor" prognosis that she could obtain minimally adequate parenting based on her denial that L.R. was neglected, her significant cognitive deficit, her "historical poor judgment," and her lack of insight regarding the allegations of abuse and neglect. Finally, it is notable that L.R. was only two years of age at the time the circuit court made its final decision. We have held that

> "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and

4

physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4. The circuit court was presented with petitioner's failure to cooperate with the DHHR, her failure to remedy the conditions on her own, and a prognosis that petitioner was unlikely to improve her parenting. Upon these factors, we find no error with the circuit court's conclusion that there was no reasonable likelihood that petitioner could remedy the conditions of neglect and abuse, rather than speculate as to petitioner's improvement at the cost of the very young L.R.

> This Court has held that

> > "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). The circuit court was within its discretion to terminate petitioner's parental rights based on the findings below. Accordingly, we find no error.

> As a final observation, this Court notes that the proceedings against L.R.'s father are ongoing, and we remind the circuit court of its duty to establish permanency for the child. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires that

> > [a]t least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the child within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 6. Moreover, this Court has stated that

[i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(c)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home [cannot] be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 23, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: May 12, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn